UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FREEDOM FROM RELIGION ) <br> FOUNDATION, INC., and TRIANGLE ) <br> FFRF, ) <br> ) <br>     Plaintiff, ) <br> ) Case No. 12-CV-946 <br> v. ) <br> ) <br> DANIEL I. WERFEL, Principal Deputy ) <br> Commissioner and Deputy Commissioner for ) <br> Services and Enforcement, ) <br> ) <br>     Defendant. | |

### *REPLY IN SUPPORT OF UNITED STATES' MOTION TO DISMISS*

Freedom From Religion Foundation, Inc. and Triangle FFRF (collectively, "FFRF") have not suffered any injury in this case, nor do they face any prospective injury in this case. Yet, in Plaintiff's Brief in Opposition to Government's Motion to Dismiss, Doc. ("Pl's Br."), FFRF opposes the government's motion to dismiss by asking this Court to disregard the rules of judicial restraint and conclude that "discrimination itself confers standing." Indeed, FFRF essentially asks this Court to adopt a new standard that would confer standing on virtually any would-be litigant wishing to generally challenge tax laws that do not apply to them.

FFRF has not established that it has suffered any injury in fact because it has not alleged a concrete or particularized injury fairly traceable to the action (or inaction) it challenges. As a result, FFRF has failed to establish standing to challenge the IRS's enforcement of 26 U.S.C. §§ 508 and 6033.[1] FFRF focuses on the relief it seeks without actually discussing how the challenged statutes operate and concretely and particularly injure FFRF. Still, FFRF claims to

---

[1] All statutory references refer to the Internal Revenue Code (26 U.S.C.), unless otherwise noted.

1

have suffered a concrete and particularized injury in this case. Thus, FFRF asks this Court to adopt a rationale that would provide standing to any plaintiff to challenge any statute with which that plaintiff disagrees.

Second, to the extent that FFRF seeks an injunction that would prevent the IRS from requiring FFRF and similar organizations to file the application and information returns at issue, such relief is clearly barred by the Anti-Injunction Act. FFRF ignores the government's argument that any action that restrains the IRS from making determinations regarding tax-exempt status would, in fact, hinder the assessment and collection of taxes from purportedly tax-exempt organizations. Such relief is barred by Anti-Injunction Act. FFRF's request for a declaratory judgment is barred by the Declaratory Judgment Act, which prohibits this Court from issuing declaratory judgments in controversies with respect to federal taxes, aptly describing the present case.

## I.     FFRF LACKS STANDING TO MAINTAIN THIS ACTION.

FFRF has not suffered any injury, and therefore fails to provide this Court with any reason to exercise jurisdiction in this case. FFRF's Complaint does not demonstrate an injury in fact, which is concrete and particularized, actual or imminent as opposed to conjectural or hypothetical. Notably, FFRF does not contend:

- that it has been denied any treatment that it has sought from the IRS;
- that there is any factual nexus between its status as a tax-exempt entity and the declaration and injunction it seeks in this case;
- that it is entitled to any other treatment it has not received with respect to its tax-exempt status;

- that it has suffered any present injury to its ability to carry out its mission;

- that it seeks to recover the user fee it paid in applying for tax-exempt status;

- that it would have taken, or intends to take, any course of conduct but for the requirement to file Forms 990 or 1023; or

- that its status or activities would change as a result of either a favorable or an unfavorable judgment in this case.

Indeed, the only factual allegations regarding FFRF in the "Statement of Alleged Facts and Claims" are that both plaintiffs are tax exempt § 501(c)(3) non-profit organizations that "have each filed the application required for recognition of tax-exempt status by the IRS under §501(c)(3), and they also have paid the required application fee." (Compl. ¶¶ 2, 18.) FFRF contends that Triangle FFRF has filed an application and paid a fee "in order to apply for §501(c)(3) tax-exempt status, which the IRS granted on January 12, 2011." (*Id*. ¶ 13.) FFRF further claims that "[t]he plaintiffs also have been annually filing the information return, Form 990, required by §501(c)(3), and they will continue to do so in the future." (*Id*. ¶ 19.) The Complaint is devoid of any mention of either I.R.C. §§ 508 or 6033, even though those are the statutes FFRF really seems to challenge. The Complaint does not allege that FFRF has applied for an exemption under either provision, let alone that the IRS has denied such application. As a result, FFRF has not suffered any concrete, particularized injury that is fairly traceable to any challenged government action that could be redressed by a favorable judgment in this case, and the Complaint should be dismissed.

//

//

### A. FFRF Cannot Dispense With The Concreteness And Particularity Requirements.

FFRF has not identified an invasion of any concrete or particular right in this case. Instead, FFRF contends that it has standing to seek a judicial decree to compel the IRS, without legislative authority, to require churches to file Forms 990 and 1023 and to pay the user fee associated with applying for § 501(c)(3) tax-exempt status. FFRF seeks to invalidate statutes which do not apply to it, and FFRF does not allege that it seeks to have those statutes applied or otherwise tested. As such, FFRF seeks to elide the constitutionally mandated standing requirement by refusing to allege a concrete, particularized injury, and instead asserting that it has standing because it disagrees with a law that does not apply to it. FFRF essentially seeks to "convert standing into a requirement that must be observed only when satisfied." *Valley Forge Christian College v. Americans United For Separation Of Church And State, Inc.*, 454 U.S. 464, 489 (1982).

FFRF has not identified a case that requires this Court to recognize standing where the only allegations of injury concern the treatment of third parties without any present or future effect on the plaintiff. The existence of a general disparity in one's treatment, without more, is not a judicially cognizable injury. To recognize FFRF's Complaint as alleging an injury would thus contravene the doctrine of standing, a doctrine intended to impose limits on the exercise of judicial power. That is because courts vigorously enforce the requirement that a concrete injury of such differential treatment be accorded to the plaintiff in order for a case to be subject to judicial adjudication. Thus, this Court should find that FFRF lacks standing to seek redress of a purely psychic injury absent some concrete right that has been invaded.

Though FFRF suggests that "non-exempt taxpayers have standing to challenge the constitutionality of tax code exemptions," (Pl's Br. at 20), the Supreme Court has recently rejected this contention, holding that state taxpayers do not have standing to challenge the constitutionality of a tax credit because those taxpayers have not suffered an injury, even accepting the contention that such tax credits overwhelmingly supported sectarian religious schools. *Ariz. Christian Sch. Tuition Org. v. Winn*, — U.S. —, 131 S. Ct. 1436, 1442 (2011) (hereafter, "*ACSTO*"). Likewise, an injury was suffered by the plaintiffs in *Texas Monthly v. Bullock*, 489 U.S. 1 (1989) and *Finlator v. Powers*, 902 F.2d 1158 (4th Cir. 1990) because in each case the sales taxes at issue had been paid by the plaintiffs. *Accord Planned Parenthood of S.C., Inc. v. Rose*, 361 F.3d 786, 790 (4th Cir. 2004) (holding that the state's denial of plaintiffs' entry to the "forum for expression" in expressing views on licenses plates constituted an injury in fact).[2]

And contrary to FFRF's characterization of *Texas Monthly* as providing standing whenever any statute is "underinclusive," in *Texas Monthly* the Supreme Court premised its holding on the notion that "[a] live controversy persists over Texas Monthly's right to recover the $149,107.74 it paid, plus interest." *Texas Monthly*, 489 U.S. at 8; *see also ACSTO*, 131 S. Ct. at 1440 & 1449 (citing *Texas Monthly* and describing the case as follows: "finding standing where a general interest magazine ***sought to recover tax payments*** on the ground that religious periodicals were exempt from the tax" (emphasis added)).

FFRF cites several cases for the proposition that a commonly shared injury does not render the injury non-concrete. (Pl's Br. at 18-21.) However, in each of these cases, the plaintiff

---

[2] *Finlator v. Powers* and *Planned Parenthood of S.C. v. Rose*, cases on which FFRF relies, were implicitly overruled by the Supreme Court's holding in *ACSTO*, and were not even mentioned in the dissent's survey of cases.

had standing because some concrete right was in controversy, and that right had been subjected to some actual injury susceptible to judicial adjudication. *Compare* (Pl's Br. at 19-21) *with FEC v. Akins*, 524 U.S. 11, 19-23 (1998) (standing found by virtue of Congressionally created right of action in Federal Election Campaign Act, § 437g, and present injury to plaintiff's ability to obtain relevant information); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 496 (7th Cir. 2005) (present economic injury to plaintiff-competitor tribe in higher cost of capital).

For example, in *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687-89 (1973), the Supreme Court in dicta acknowledged that standing should not be denied where the particularity requirement was met even if the injury was shared in common with others, yet denied standing to the plaintiffs on the grounds that they had not suffered any injury more concrete than their desire to see the government act in a manner that conformed to their wishes. *See id.* at 689 ("A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action.").

Nor do the other cases that FFRF has cited abrogate the particularity requirement by virtue of the fact that nullification was a potential remedy in those cases. *Compare* (Pl's Br. at 9) *with Allegheny Pittsburgh Coal Co. v. County Com.*, 488 U.S. 336, 339 (1989) (petitioners had federal standing to appeal county's administrative denial of adjustments sought); *Compare* (Pl's Br. at 9) *with Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 872 (1985) (plaintiffs sought appeal of denial of refunds of taxes already paid); *compare* (Pl's Br. at 13-14) *with Budlong v. Graham*, 488 F. Supp. 2d 1252, 1253 (N.D. Ga. 2007) (plaintiffs sought refund of taxes paid

6

and continued to sell products which were subject to the sales tax challenged); *compare* (Pl's Br. at 10-11) *with Am. Atheists, Inc. v. City of Detroit Downtown Dev. Auth.*, 567 F.3d 278, 284-285 (6th Cir. 2009) (municipal taxpayers have taxpayer standing) *and Sherman v. Illinois*, 682 F.3d 643, 647 (7th Cir. 2012) (distinguishing *Am. Atheists*); *compare* (Pl's Br. at 14) *with New Orleans Secular Humanist Ass'n v. Bridges*, Civil No. 04-3165, (E.D. La. July 8, 2005) (Order and Reasons, p. 5) (holding that the exception established in *Flast v. Cohen*, 392 U.S. 83, 102-03 (1968) had been met by virtue of challenged government transfer of funds); *compare* (Pl's Br. at 15) *with In re Condemnation Proceeding in REM*, 891 A.2d 820, 822 (Pa. Commw. Ct. 2006) (eminent domain proceeding regarding condemnation of the petitioner's property appealing the order of the court to condemn); *compare* (Pl's Br. at 16) *with Larson v. Valente*, 456 U.S. 228, 241 (1982) (plaintiff had standing to challenge state's attempts to force plaintiff into registration requirements and suffered a present injury to its ability to solicit contributions); *compare* (Pl's Br. at 22) *with Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 428-429 (6th Cir. 2008) (plaintiff wholesalers had already lost profits as a result of the challenged court ruling).

    **B.**   **This Case Does Not Present A Valid Pre-Enforcement Challenge.**

  FFRF cites various cases for the proposition that a plaintiff may bring a pre-enforcement challenge to the constitutionality of a statute. (Pl's Br. at 16-18.) However, that line of cases does not afford FFRF standing here as FFRF has neither suffered some present injury nor alleged that it would engage in some protected conduct were it not for the existence of the challenged exemptions. As a result, each of the cases cited by FFRF is readily distinguishable.

7

FFRF attempts to characterize the factual context of this case as "differential treatment," even though FFRF does not allege that it sought some treatment that it was denied, or that the IRS has done anything to enforce any particular reporting requirements against it with respect to its tax-exempt status. Instead, FFRF simply alleges that "discrimination itself gives rise to standing," (Pl's Br. at 18) and that it "is similarly situated to churches and religious organizations that otherwise are preferentially excluded from the requirements of § 501(c)(3)." (Pl's Br. at 19.) FFRF admittedly does not seek to engage in any protected conduct that could even potentially result in an injury to preemptively challenge. Instead, FFRF abstractly asserts that "a person need not risk sanctions before bringing a pre-enforcement challenge. The existence of a statute or regulation implies a clear threat to enforce, so a pre-enforcement challenge is proper under Article III." (Pl's Br. at 16) (citing *Goldhammer v. Nagoad*, 621 F.3d 581, 586 (7th Cir. 2010); *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003)).

Contrary to FFRF's characterization, however, each of those cases required actual, concrete action on the part of the plaintiffs in order to confer standing. For example, in *Goldhammer v. Nagoad*, the U.S. Court of Appeals for the Seventh Circuit denied standing to plaintiffs who were arrested pursuant to a criminal statute that penalized individuals who failed to disperse upon the order of a police officer, even though they had not been disorderly, as the statute requires. 621 F.3d at 583. Plaintiffs, who regularly participated in peaceful political demonstrations, asserted that this arrest, and the fear of future arrests, gave them the right to pre-emptively seek an injunction against enforcement of the failure-to-disperse statute. *Id.* The Court held that plaintiffs lacked standing to bring a claim for injunctive relief because the

challenged statute had not in fact been applied to them. *Id.* at 587 (citing *Majors* and adopting the approach of *PeTA v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002), which held that "plaintiffs lacked standing to bring a facial challenge to a law that did not apply by its terms to their desired conduct"). Thus, *Goldhammer* clearly undermines FFRF's claim for standing.

In *Bauer v. Shepard*, the court held that judges had standing to challenge certain speech restrictions on judges who demonstrated their intent to engage in conduct that would violate the challenged provisions of the Indiana Code of Judicial Conduct. 620 F.3d at 708. The judges were individuals who clearly fell within the ambit of the challenged law, and had an injury in their hampered ability to engage in the arguably protected conduct proscribed by the challenged Code. Here, by contrast, FFRF has affirmatively demonstrated that it has no intention or desire to seek § 501(c)(3) status without filing a Form 1023, a refund of the user fee paid, or to cease filing Forms 990, undermining its contention that FFRF may preemptively challenge a law before it is applied. Moreover, *Bauer* only came in the wake of *Indiana Right to Life, Inc. v. Shepard*, 507 F.3d 545 (7th Cir. 2007), in which the U.S. Court of Appeals for the Seventh Circuit held that the plaintiff organization lacked standing to challenge the constitutionality of the exact same provisions because there was no evidence of any enforcement action as to the plaintiff or any other individual so as to impair the plaintiff's rights to listen. *Indiana Right to Life*, 507 F.3d at 549-50. Thus, *Indiana Right to Life* is on all fours with the present case in that an organization that has not had any actual, factual treatment or injury by virtue of some challenged policy lacks standing.

The same holds true for *Majors v. Abell*, wherein the U.S. Court of Appeals for the Seventh Circuit explained that pre-enforcement challenges require an actual threat of

9

prosecution of protected conduct that the plaintiff intends to take. "[T]he threat is latent in the existence of the statute. Not if it clearly fails to cover his conduct, of course." *Majors*, 317 F. 3d at 721. Thus, because the only "threat of prosecution" (i.e., the revocation of its tax-exempt status) identified by FFRF does not exist in the course of conduct it seeks to take, FFRF's reliance on *Majors v. Abell* is misplaced.

*Brandt v. Village of Winnetka*, 612 F.3d 647 (7th Cir. 2010) does not contradict this conclusion. There, the plaintiff had standing by virtue of the alleged present injury to plaintiff's ability to attract political candidates to his house as a result of the challenged statute. *See id.* at 649. As with *Majors*, the injury in *Brandt* depended on the expressed intention of the plaintiff to engage in constitutionally protected conduct that was proscribed by the challenged statute.

FFRF also relies on *Lac Du Flambeau Band of Lake Superior v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005). In *Lac Du Flambeau Band*, the U.S. Court of Appeals for the Seventh Circuit, on a motion to dismiss, found that the plaintiff Indian tribe suffered a present economic injury in the form of increased costs of obtaining capital financing as a result of the challenged government action. 422 F.3d at 498. The court explained that "[p]resently felt economic pressure" is sufficiently particular as an injury for standing purposes – an explanation that lends no support to FFRF's implication that discrimination itself is sufficient absent some more concrete future injury.

Thus, the law surrounding pre-enforcement challenges is clear: a plaintiff must have either suffered some present harm as a result of imminent future enforcement or assert that he or she would have engaged in some constitutionally protected conduct but for the challenged government practice. FFRF has failed to show either. In fact, FFRF has specifically alleged that

it does not seek to change its conduct – now or in the future, including continuing to file Forms 990. (Compl., ¶ 19.) Nor has FFRF alleged that it presently suffers any harm or impairment as a result of a future injury that is likely to occur by operation of any statute or government policy. Instead, FFRF asks this Court to find that FFRF has standing because of some nebulous and factually untethered notion of "discrimination itself." The standing doctrine requires this Court to refuse that invitation.

### C. FFRF Has Not Established Traceability.

Despite the fact that the United States argued that FFRF has failed to demonstrate how its status has in any way been affected by any challenged policy or statute, FFRF did not respond to this argument or otherwise satisfy its burden to establish each element of standing. Instead, at the end of its Introduction, FFRF suggests that it has an injury that is "directly traceable" to the challenged exemptions. (Pl's Br. at 4.) However, FFRF has not identified any injury it has actually suffered, and the fact that FFRF purports to mount a pre-enforcement challenge does not affect the traceability requirement. Rather, traceability is a critical factor lacking in FFRF's challenge: because FFRF does not seek to abrogate the requirement to file Forms 990 or 1023 to either itself or to others FFRF has failed to establish either traceability or a likely injury in fact.

### D. Nullification Is Not An Appropriate Remedy.

Despite FFRF's lengthy contentions regarding the use of nullification as a remedy in certain constitutional challenges, such a remedy would nonetheless fail to redress any judicially cognizable injury. No court order would redress any probable or present injury that could give rise to a pre-enforcement challenge, as discussed above. FFRF does not seek an order that

would actually redress an injury in fact because FFRF does not seek an order that would permit FFRF to recover the user fee it paid or to cease filing either the Forms 1023 or 990.

Furthermore, nullification is an especially inappropriate remedy in the context of the exemption from the requirement to pay a user fee. Even though FFRF has not alleged any injury in general, it has not even purported to allege a continuing injury by virtue of having paid a one-time user fee. FFRF does not allege it will continue to pay such user fees in the future, or that there is any ongoing injury as a result of having paid it before. As a result, no injunction should be issued with respect to that exemption. *See Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991) ("When there is no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers."); *see also Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

### E. The Doctrine Of Prudential Standing Bars This Suit.

The doctrine of prudential standing also bars this suit – and FFRF's opposition brief does not contradict that conclusion. FFRF analyzes the doctrine of prudential standing as though the only relevant question is whether its Complaint alleges a constitutional violation. FFRF cites to a litany of cases that involved challenges to the constitutional validity of statutes that arguably limited speech in one way or another. None involved a challenge to an allegedly discriminatory requirement to file information returns of the type at issue here. *Compare* Pl's Br. at 36-38 *with R.A.V. v. St. Paul*, 505 U.S. 377, 380 (1992) (involving challenge to bias-motivated city crime ordinance); *Citizens United v. FEC*, 558 U.S. 310, 322 (U.S. 2010)

(involving challenge to the facial validity of 2 U.S.C. § 441b of the Bipartisan Campaign Reform Act of 2002); *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011) (considering whether a California law imposing restrictions on violent video games comports with the First Amendment); *City of Ladue v. Gilleo*, 512 U.S. 43, 45 (1994) (considering whether a city ordinance that permitted commercial establishments, churches, and nonprofit organizations to erect certain signs that are not allowed at residences violated resident's right to free speech); *Saieg v. City of Dearborn*, 641 F.3d 727, 730 (6th Cir. 2011) (considering whether certain leafleting restriction violated First Amendment right to free speech, freedom to associate, free exercise of religion, and equal protection rights); *Ripplinger v. Collins*, 868 F.2d 1043, 1046 (9th Cir. 1989) (involving challenge to Arizona obscenity regulation scheme as unconstitutional on its face); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 223 (1987) (involving First Amendment challenge to state sales tax statute that taxed general interest magazines, but exempted newspapers and religious, professional, trade, and sports journals).

      This case implicates the manner in which the IRS verifies whether or not an organization qualifies for tax-exempt status. Contrary to the general sort of First Amendment challenges cited by FFRF, the determination of which documents the executive branch must review in order to determine whether or not a church qualifies for § 501(c)(3) tax-exempt status is a factor which *is* relevant to the prudential standing inquiry. Because FFRF seeks to have this Court insert FFRF's preferred mode of enforcement in the place of a statutory judgment in its request for injunctive and declaratory relief, this is precisely the type of lawsuit that this Court should refuse to adjudicate for prudential reasons.

## II. THE ANTI-INJUNCTION ACT AND THE DECLARATORY JUDGMENT ACT DEPRIVE THIS COURT OF JURISDICTION.

FFRF argues that neither the Anti-Injunction Act ("AIA") nor the Declaratory Judgment Act ("DJA") present any "obstacle" to the present suit. (Pls' Br. at 27-32.) In support of this argument, FFRF asserts that the statutes are "coterminous" and neither presents a bar to suits that do not restrain or impede the collection of taxes and would not reduce the flow of tax revenue. (Pls' Brief at 27, 28, 29, 31.) FFRF misses the point.

The AIA applies not only to the actual assessment of taxes, but also "to activities which are intended to or may culminate in the assessment or collection of taxes," *United States v. Dema*, 544 F.2d 1373, 1376 (7th Cir. 1976), including suits seeking to enjoin the enforcement of information reporting requirements imposed by the internal revenue laws. *Debt Buyers' Ass'n v. Snow*, 481 F. Supp. 2d 1, 3 (D.D.C. 2006). On this critical point, FFRF has nothing to say. FFRF's Opposition is replete with references to nullification as the remedy it seeks. However, as discussed above, such relief would not redress any injury personal to FFRF. Indeed, to the extent FFRF seeks relief from the requirement to file Forms 1023 and 990 for itself and similar organizations, such relief would be prohibited by the AIA because the information reported in Form 1023 and Form 990 "will be used to enable the IRS" to determine tax exempt status; thus, "any action that hinders the IRS in determining the accuracy" of its tax exempt determinations "will in fact hinder the assessment and collection of taxes" and therefore "fall within the auspices of the AIA." *Debt Buyers' Ass'n*, 481 F. Supp. 2d at 9. Therefore, even assuming FFRF had properly alleged an injury in fact personal to it, it is clear that an injunction

prohibiting the IRS from requiring FFRF to file either Forms 1023 and/or 990 would hinder the IRS's assessment and collection procedures.

In addition, FFRF's reliance on *Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011), is unpersuasive. As an initial matter, the court in *Cohen* expressly held that the suit was not about assessment and collection. 650 F.3d at 725-26. As the court explained, "[t]his suit does not seek to restrain the assessment or collection of any tax." *Id.* at 725. Notably, the court likened the facts in *Cohen* to those in *Hibbs* and others, stating that hearing the case "whatever its merit – will not obstruct the collection of revenue as in *Snyder*, alter Appellants' future tax liabilities as in *Bob Jones*, or shift the risk of insolvency as the Court feared in *Grace Brethren Church*." *Id.* (internal footnote omitted). Unlike *Cohen* and *Hibbs*, on which FFRF places substantial reliance, this suit – to the extent it seeks to invalidate the IRS's use of Forms 1023 and 990 – can and will impede the assessment or collection of taxes. Moreover, the court in *Cohen* stated plainly that the case was "*sui generis*" because allowing the litigants in that case "to proceed without first filing a refund claim will not open the courthouse door to those wishing to avoid administrative exhaustion procedures in other cases." *Id.* at 733. For this reason too, FFRF's reliance on *Cohen* is misplaced.

And though "the scope of [the DJA] has not yet been conclusively settled, the Supreme Court has stated that 'the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act.'" *Rappaport v. United States*, 583 F.2d 298, 302 (7th Cir. 1978) (quoting *Bob Jones Univ.*, 416 U.S. at 733 n.7.) Thus, for the same reasons that FFRF's suit is affirmatively barred by the AIA, so too should FFRF's request for declaratory relief be barred by the DJA.

15

## *CONCLUSION*

For all of the foregoing reasons, and for those reasons set forth in the United States' Memorandum in Support of its Motion to Dismiss, FFRF's Complaint should be dismissed.

Dated: June 21, 2013                        Respectfully submitted,

*/s/ Richard G. Rose*
RICHARD G. ROSE
District of Columbia Bar Number: 493454
U.S. Department of Justice
Tax Division
Post Office Box 7238
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-2032
Facsimile: (202) 514-6770
E-mail: richard.g.rose@usdoj.gov

*/s/ Richard Adam Schwartz*
RICHARD ADAM SCHWARTZ
California Bar Number: 267469
U.S. Department of Justice
Tax Division
Post Office Box 683
Washington, D.C. 20044
Telephone: (202) 307-6322
Fax: (202) 307-0054
E-mail: richard.a.schwartz@usdoj.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that, on June 21, 2013, service of the foregoing REPLY IN SUPPORT OF UNITED STATES' MOTION TO DISMISS was made upon Plaintiff by filing it with the Clerk of Court using the CM/ECF system.

>*/s/ Richard A. Schwartz*
>RICHARD A. SCHWARTZ