IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FREEDOM FROM RELIGION FOUNDATION
and TRIANGLE FFRF,

                                            OPINION AND ORDER

                Plaintiffs,

                                               12-cv-946-bbc

     v.

DANIEL I. WERFEL, Acting Commissioner of the
Internal Revenue Service,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this lawsuit brought under the Administrative Procedure Act, plaintiffs Freedom from Religion Foundation and Triangle FFRF contend that the Internal Revenue Service is violating the establishment clause and the equal protection clause of the Constitution by imposing different requirements on churches and other nonprofit organizations in obtaining and maintaining tax exempt status under § 501(c)(3) of the tax code. In particular, plaintiffs allege that they were required to file a "detailed application" (Form 1023) and pay a fee before obtaining tax exempt status and since then they have been required to file "detailed, intrusive and expensive annual reports" (Form 990) in order to maintain that status, but churches are not required to do either of these things. Cpt. ¶¶ 2, 13-14, dkt. #2. Now before the court is the government's motion to dismiss the complaint on the ground that plaintiffs lack standing to challenge the exemptions. Dkt. #7. (Oddly, plaintiffs do not

1

identify the relevant laws in their complaint or brief, but the government says in its opening brief that they are 26 U.S.C. §§ 508(c)(1) and 6033(a)(1) and plaintiffs do not dispute that in their response.)

In an order dated July 31, 2013, dkt. #15, I asked the parties to file supplemental briefs to address the question whether the government's motion in this case can be distinguished from the one filed by the government in Freedom from Religion Foundation v. Geithner, No. 11-cv-626-bbc (W.D. Wis. Aug. 29, 2012). Having reviewed those briefs, I am denying the government's motion to dismiss with respect to the exemption for filing annual reports. However, with respect to the application requirements, I am directing plaintiffs to show cause why that claim should not be dismissed.

OPINION

A. Annual Reports

With respect to the exemption for filing annual reports, I conclude that the government's motion in this case is indistinguishable from the one it filed in Geithner, in which it argued that the plaintiffs did not have standing to challenge 26 U.S.C. § 107 under the establishment clause and the equal protection clause. Section 107 gives a tax exemption to any "minister of the gospel" for compensation received related to certain housing expenses incurred in a given year, but it does not provide the same exemption to employees of other nonprofit organizations. The plaintiffs argued that they had standing to sue because they were officers for a nonprofit organization who received compensation for housing expenses,

2

so they otherwise would be entitled to the exemption if they were ministers.

The government made many of the same arguments about standing and cited many of the same cases in Geithner as in this case, but I found those arguments unpersuasive and denied the motion to dismiss because the allegedly discriminatory treatment the plaintiffs received under the statute was an injury in fact that could remedied by eliminating the exemption.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (to obtain standing under Article III, plaintiffs must show that they suffered injury in fact that is fairly traceable to defendant's action and capable of being redressed by favorable decision from court).

In this case, the government repeats its strawman arguments that a plaintiff cannot obtain standing through his status as a taxpayer, Arizona Christian School Tuition Organization v. Winn, 131 S. Ct. 1436, 1439 (2011), or though mere disagreement with the government's conduct.  Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 483 (1982).  Again, plaintiffs are not challenging the exemption on either ground.  Rather, plaintiffs are claiming the same type of injury as in Geithner.

The statute at issue in Geithner gave an annual tax exemption to certain religious persons that other, similarly situated persons such as the plaintiffs could not receive.  In this case, the law at issue gives "churches" an annual exemption for filing reports that other nonprofit organizations such as plaintiffs must file. Thus, in both cases, the claim is that the government is relieving an ongoing burden from some taxpayers on the basis of religious

3

affiliation and in both cases the alleged injury is the unequal treatment.

The government repeatedly frames the issue as whether plaintiffs should be permitted to file a lawsuit to enforce "their belief that churches should be subject to application and filing requirements," Dft.'s Br., dkt. #8, at 1-2, but that is another mischaracterization of plaintiffs' alleged injury. Although it may be that plaintiffs believe that churches should not receive exemptions from tax requirements, it is not plaintiffs' "belief" that gives them standing. Rather, it is their status as organizations that are burdened with requirements not imposed on churches.

In Geithner, the government acknowledged the well established proposition that a person has suffered an injury in fact for the purpose of standing if she is denied a tax exemption that others receive. Winn, 131 S. Ct. at 1439 ("[P]laintiffs may demonstrate standing on the ground that they have incurred a cost or been denied a benefit on account of their religion. Those costs and benefits can result from alleged discrimination in the tax code, such as when the availability of a tax exemption is conditioned on religious affiliation."). See also Texas Monthly, Inc. v. Bullock, 489 U.S. 1 (1989); Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 224-25 (1987). However, the government argued that the plaintiffs did not have standing until they requested the exemption and the government denied it. I rejected this argument and concluded that a pre-enforcement challenge was appropriate because the plaintiffs' alleged injury was clear from the face of the statute and there was no plausible argument that the plaintiffs could qualify for an exemption as "ministers of the gospel." California Medical Association v. Federal Electric

Commission, 453 U.S. 182, 192 (1981) (concluding that plaintiffs had standing, noting that they "expressly challenge the statute on its face, and there is no suggestion that the statute is susceptible to an interpretation that would remove the need for resolving the constitutional questions raised"); Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Illinois, 9 F.3d 1290, 1291-92 (7th Cir. 1993) ("Challenges to statutes as written, without inquiring into their application, are appropriate when details of implementation are inconsequential.").

In this case, the government admits that plaintiffs could not qualify as "churches" in order to receive the exemption and it has not developed an argument that plaintiffs should refuse to prepare the annual reports and wait to be penalized for it. Instead, the government is taking the position that plaintiffs do not have standing *because* "the filing exceptions at issue plainly do not apply to" them. Dft.'s Br., dkt. #8, at 1. In other words, the government seems to be saying that plaintiffs have no business challenging an exemption that they do not receive. It is difficult to discern the logic of this argument because it suggests that only those entities that receive the exemption would have standing to challenge it. That is obviously wrong because any entity receiving the exemption would not be injured by it. It is plaintiffs' exclusion from the exemption that creates the unequal treatment that gives them standing to sue.

The government cites Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 509 (1937), Templeton v. Commissioner, 719 F.2d 1408, 1413-14 (7th Cir. 1983), and Droz v. Commissioner, 48 F.3d 1120, 1122 & n.1 (9th Cir. 1995), for the proposition that

plaintiff's allegation of unequal treatment "does not concern any invasion of a legally protected right," Dft.'s Br., dkt. #8, at 11, but each of those cases was about whether particular tax provisions violated the Constitution. None of them was about standing. Defendant has not developed an argument in its briefs about the merits of plaintiffs' claims, so I do not address that issue. Bond v. United States, 131 S. Ct. 2355, 2362-63 (2011) ("[T]he question whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute.").

Alternatively, the government argues that plaintiffs have not identified an injury that can be remedied in this lawsuit. Sierra Club v. Franklin County Power of Illinois, LLC, 546 F.3d 918, 927-28 (7th Cir. 2008) ("[A] plaintiff must show that a favorable decision will likely, not just speculatively, relieve her injury."). To the extent that plaintiffs are seeking an order relieving them of the obligation to file reports in the future, the government says that the request would be barred by the Anti-Injunction Act, which prohibits any suit brought "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). See also Debt Buyers' Association v. Snow, 481 F. Supp. 2d 1 (D.D.C. 2006) (Anti-Injunction Act prohibited suit challenging requirement to file tax form). To the extent that plaintiffs are seeking an injunction to prohibit the government from granting the exemption to churches, the government seems to concede that the Anti-Injunction Act would not apply because it would not interfere with the IRS's ability to collect taxes. Cf. Hibbs v. Winn, 542 U.S. 88, 107-08 (2004) (challenge to state tax exemption not barred by Tax Injunction Act, which is state corollary to Anti-Injunction Act). However, it argues that

6

eliminating the exemption for others would not redress an injury suffered by plaintiffs because they obtain no benefit from imposing a tax requirement on a third party.

The government's argument about the Anti-Injunction Act is puzzling. It devotes four pages of its opening brief to the argument (and two more in its reply brief), even though it acknowledges that plaintiffs are not asking to be included in the exemption. Cpt. ¶ 19, dkt. #2 ("The plaintiffs have been annually filing the information return, Form 990, required by § 501(c)(3), and they will continue to do so in the future.").

It is equally puzzling why the government is arguing that any unequal treatment cannot be remedied by eliminating the exemption for everyone. In Geithner, the government stated that it "does not dispute that, in properly presented constitutional challenges, nullification is an available remedy when there is no other option to redress an actual injury." Dkt. #23 at 13. The government seems to be backtracking on that concession now, but it is not clear why because the rule is clearly established in Supreme Court precedent. Heckler v. Mathews, 465 U.S. 728, 740 (1984) ("We have often recognized that the victims of a discriminatory government program may be remedied by an end to preferential treatment for others."). Accord Texas Monthly, 489 U.S. at 7-8; Orr v. Orr, 440 U.S. 268, 271-72 (1979). The government does not even try to explain why Heckler and the other cases, all of which were cited by plaintiffs, do not allow plaintiffs to seek elimination of the exemption as a remedy.

In its supplemental brief, the government raises a new argument that organizations such as plaintiffs cannot establish standing without showing that "programmatic goals have

7

been impeded by the challenged disparity." Dft.'s Br., dkt. #17, at 2 (citing Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982); National Taxpayers Union, Inc. v. United States, 68 F.3d 1428 (1995)).  However, neither of the cited cases stands for this proposition.  In Haven, 455 U.S. at 379, the Court held that *one* way an organization can establish standing is through an adverse effect on the organization's ability to carry out its mission, not that it is the *only* way.  Rather, the same standing requirements that apply to individuals apply to organizations.  Milwaukee Police Association v. Board of Fire & Police Commissioners of City of Milwaukee, 708 F.3d 921, 926 (7th Cir. 2013); 15 Moore's Federal Practice § 101.60[1][f] at 101-146 (3d ed.).  The government cites no authority holding that unequal treatment cannot qualify as an injury in fact to an organization.  If that were the case, the Supreme Court could not have decided Texas Monthly or Arkansas Writers' Project, two cases about discriminatory tax laws in which the plaintiffs' only alleged injury was unequal treatment.  Although those cases involved companies rather than nonprofit organizations, I see no plausible grounds for making standing requirements more onerous for one type of entity over the other.

      The government's remaining arguments do not require significant discussion.  First, the government says that plaintiffs may not challenge a law before it has been enforced against them unless they are suffering a "present hardship."  Rock Energy Co-op. v. Village of Rockton, 614 F.3d 745, 749 (7th Cir. 2010).  This is yet another puzzling argument because, as noted above, the government does not suggest that plaintiffs should refuse to prepare an annual report and risk losing their tax exempt status as a means of obtaining

standing. In any event, as I noted in Geithner, parties need not engage in conduct clearly prohibited by a statute before challenging the statute. E.g., Ezell v. City of Chicago, 651 F.3d 684, 695-96 (7th Cir. 2011); Schirmer v. Nagode, 621 F.3d 581, 586 (7th Cir. 2010). The "present hardship" requirement that the government cites is simply another way of saying that the plaintiff must show that she is being harmed *now*. Because the unequal treatment plaintiffs allege is ongoing, plaintiffs have met that requirement as well.

Second, the government says that there are various "prudential" reasons that the court should dismiss the case: (1) plaintiffs are "not asserting or attempting to litigate their own rights"; (2) plaintiffs' claims are "more appropriately addressed in the executive and representative branches of government"; and (3) the executive branch "is entitled to prioritize certain enforcement responsibilities over others." Dft.'s Br., dkt. #8 at 21. The government's first argument is simply a repackaging of its previous argument that plaintiffs do not have a redressable injury because they are seeking to eliminate preferential treatment for others rather than gain more favorable treatment for themselves. If the government's argument were accepted, it would apply to *any* form of discriminatory treatment in the tax statutes. For example, if the tax code imposed certain requirements or fees on African American taxpayers, but not on Caucasian taxpayers, the government's logic would require a conclusion that African Americans had no standing to eliminate the discriminatory exemption. As the Supreme Court has explained in Heckler, 465 U.S. 728, and other cases, that is not the law.

With respect to the other two arguments, the government cites no authority for a

9

view that a federal court may decline to exercise jurisdiction over a case simply because one party believes it would be "more appropriate" to allow other branches of government to address the issue or because it might be inconsistent with the way the government wants to "prioritize" its responsibilities. Wilton v. Seven Falls Co., 515 U.S. 277, 284 (1995) ("[F]ederal courts have a virtually unflagging obligation to exercise the jurisdiction conferred on them by Congress.") (internal quotations omitted). Federal courts may dismiss a case under the so-called political question doctrine in the rare situation when "the relevant considerations are beyond the courts' capacity to gather and weigh or have been committed by the Constitution to the exclusive, unreviewable discretion of the executive and/or legislative—the so-called 'political'—branches of the federal government." Judge v. Quinn, 624 F.3d 352, 358 (7th Cir. 2010) (internal quotations and alterations omitted). That standard is not met in this case and the government does not suggest otherwise.

Finally, the government suggests that the Declaratory Judgment Act may be read as forbidding all lawsuits related to taxes, but it acknowledges that the Court of Appeals for the Seventh Circuit has interpreted that act as being coextensive with the Anti-Injunction Act. Tomlinson v. Smith, 128 F.2d 808, 811 (7th Cir. 1942). Because I am bound by the ruling of the court of appeals on this issue, I cannot consider the government's argument.

### B. Application Requirements

An important difference between the annual reports and the application requirements is that the annual reports are an ongoing requirement. Plaintiffs admit in their complaint

that both of them have already filed their application for tax exempt status and they have paid the required application fee. Cpt. ¶ 18, dkt. #2. They do not suggest in their complaint or their brief that they will ever be required to submit another application again. Thus, whatever injury plaintiffs have suffered is in the past.

Generally, past injuries are remedied through *damages*, but plaintiffs are not seeking a return of the fee or any other damages and they are not asking the government to collect application fees from churches that have already been approved for § 501(c)(3) status. Id. Rather, they are requesting a declaration that the exemption from the application requirements is unconstitutional and an order enjoining the government from "continuing" to grant the exemption to churches. Id. at 6. However, a plaintiff is not entitled to an injunction unless there is some likelihood that the defendant will violate the plaintiff's rights in the future. O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."). Further, when a plaintiff is not entitled to damages or an injunction, it is often the case the plaintiff may not receive declaratory relief either. Green v. Mansour, 474 U.S. 64, 72-73 (1985).

Because plaintiffs have not alleged that there is any chance that they will be harmed by the application requirements in the future, my tentative conclusion is that plaintiffs do not have a redressable injury with respect to that claim. However, the government did not raise this issue in its opening brief, so I will give plaintiffs an opportunity to show that the claim is justiciable despite the lack of an ongoing injury.

ORDER

IT IS ORDERED that

1. Defendant Daniel I. Werfel's motion to dismiss, dkt. #7, is DENIED with respect to the claim that church exemptions from annual tax reports are unconstitutional.

2. Plaintiffs Freedom from Religion Foundation and Triangle FFRF may have until August 30, 2013, to show that they have a redressable injury as to their claim that church exemptions from application requirements are unconstitutional.

Entered this 22d day of August, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge