UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

FREEDOM FROM RELIGION
FOUNDATION, INC.,
and TRIANGLE FFRF,

           Plaintiffs,

v.

Case No. 12 CV 0946-bbc

JOHN KOSKINEN,
COMMISSIONER OF THE
INTERNAL REVENUE SERVICE,

           Defendant.

_____

**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING STANDING**
_____

**I.    INTRODUCTION.**

      The Seventh Circuit's decision in *FFRF v. Lew* does not control standing in the present case. This is not a case challenging the revocation of tax-exempt status under § 501(c)(3); this is a case challenging an unequal burden imposed upon FFRF that is not similarly imposed on churches and church-related religious organizations. The burden of filing a Form 990 is itself a concrete and particularized injury sufficient to provide standing in this case, as this is a case about unequal burdens, rather than unequal benefits. For that reason, the Government ignores the unequal burden imposed on FFRF, which is undisputed, while arguing that FFRF has not lost its tax-exempt status, a matter that is not at issue. This case is simply not controlled by the differing facts and rationale of *FFRF v. Lew*, contrary to the Government's re-casting of the issues.

**II.    THE FORM 990 REPORTING BURDEN CONSTITUTES A CONCRETE AND PARTICULARIZED INJURY.**

      The Government misapprehends the recent decision by the Seventh Circuit in *Freedom From Religion Foundation v. Lew*, ___ F.3d ____ (7th Cir., November 13, 2014). In the present case, the

costs, expenses, and time annually incurred by FFRF for preparation and filing Form 990 constitute concrete and particularized injuries that are real and immediate. The requirement that FFRF file a Form 990 every year is not speculative; it is not discretionary; it is not subject to variance or special exception. Unlike I.R.C. § 107(2), at issue in *FFRF v. Lew*, I.R.C. § 6033(a)(1) imposes an affirmative requirement that FFRF do something, *i.e.*, file an annual Form 990 information return, in order to maintain tax-exempt status under § 501(c)(3) of the Internal Revenue Code. By contrast, I.R.C. § 6033(a)(3)(A) preferentially excepts churches and other church-related religious organizations from the burden of filing annual Form 990 information returns.

The Government also misreads the Seventh Circuit's decision in *FFRF v. Lew* as requiring that FFRF defy the I.R.S. by refusing to file a Form 990 and suffer the consequential loss of tax-exempt status under § 501(c)(3). The Seventh Circuit actually reasoned that I.R.C. § 107(2) "does not require them [Plaintiffs] to see or do anything," (Memorandum Decision at 5.), whereas § 6033(a)(1) does require FFRF to file a Form 990. Unlike in *FFRF v. Lew*, therefore, the Plaintiff in the present case does assume a burden, without any antecedent action by the I.R.S. As a result, the rationale that "without a request, there can be no denial," is not applicable in this case where a reporting burden is imposed on FFRF as a self-executing obligation.

The Court's reasoning in *FFRF v. Lew* also is inapplicable to the present case because FFRF is "personally denied equal treatment" by virtue of the Form 990 information return requirement. (*See* Memorandum Decision at 10.) Here, FFRF is obligated to file the annual Form 990 information return while churches and other religious organizations do not have to file such a return. As a result, FFRF is not merely claiming a "stigmatic" or "psychic" injury. FFRF, as a non-church or religious organization, is "personally" denied equal treatment under I.R.C. § 6033(a)(1).

Finally, the Seventh Circuit tellingly acknowledged in *FFRF v. Lew* that a party may "suffer actual injury" if they are denied an exemption that others "automatically" receive. (Memorandum

2

Decision at 15.) In the present matter, that is the case because churches and religious organizations do automatically maintain their 501(c)(3) tax exempt status without having to file a Form 990 information return, while non-church organizations, including FFRF, "automatically" must file such a return.

The discriminatory obligation to file a Form 990 information return, in short, constitutes a concrete and particularized injury that satisfies the requirement for standing every bit as much as if only Catholic or Protestant churches were required to file Form 990 returns. In fact, the Supreme Court has consistently recognized that such discriminatory burdens are sufficient to establish standing, as the Court recognized in *Orr v. Orr*, 44 U.S. 268, 273 (1979):

> There is no question but that Mr. Orr bears a burden he would not bear were he female. The issue is highlighted, although not altered, by transposing it to the sphere of race. There is no doubt that a state law imposing alimony obligations on blacks but not whites could be challenged by a black who was required to pay. The burden alone is sufficient to establish standing.

*See* also *Heckler v. Mathews,* 465 U.S. 728, 739 (1984) (the right to equal treatment guaranteed by the Constitution itself gives rise to standing).

The "injury in fact" in this case is the denial of equal treatment, not the ultimate inability to obtain a benefit. *Lac Du Flambeau Band Of Lake Superior Chippewa Indians v. Norton,* 422 F.3d 490, 497 (7th Cir. 2005), quoting *Northeastern Florida Chapter Of Associated General Contractors Of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993). The existence of a government-erected barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, therefore, constitutes an injury in fact that supports standing. *Cf. Day v. Bond*, 500 F.3d 1127, 1133 (10th Cir. 2007); *see* also *Common Cause of Georgia v. Dillups*, 554 F.3d 1340, 1351 (11th Cir. 2009) (requirement to obtain a photo identification card in order to vote is an injury sufficient to confer standing; "the alleged slightness of their burden also is not dispositive.").

Where an individual then is personally denied equal treatment as the result of challenged discriminatory conduct, objection to standing on grounds of a "generalized grievance" is unavailing. The Supreme Court has recognized this principle, even in nuanced circumstances such as allegedly gerrymandered voting districts where "individualized" injury may be hard to discern. The Supreme Court explained the animating rationale in *United States v. Hays,* 515 U.S. 737, 744-45 (1995):

> Where a plaintiff resides in a racially gerrymandered district the plaintiff has been denied equal treatment because of the legislature's reliance on racial criteria, and therefore has standing to challenge the legislature's action. Cf. *Northeastern Florida Chapter of Associated General Contractors of America v. Jacksonville*, 508 U.S. 656, 124 L. Ed. 2d 586, 113 S. Ct. 2297 (1993). Voters in such districts may suffer the special representational harms racial classifications can cause in the voting context. On the other hand, where a plaintiff does not live in such a district, he or she does not suffer those special harms, and any inference that the plaintiff has personally been subjected to a racial classification would not be justified.

In the present case, as noted above, FFRF is directly subject to the discriminatory burden of filing an annual Form 990 information return. FFRF is not claiming that churches and religious organizations receive a discriminatory preference vis-a-vis unnamed third parties. FFRF is objecting on the basis that it must personally file an annual Form 990 return, while churches and other religious organizations do not. This is a direct, concrete and particularized injury, and nothing in *FFRF v. Lew* suggests or implies otherwise.

### III. ENFORCEMENT ACTION AGAINST FFRF IS NOT A NECESSARY PREDICATE FOR STANDING.

The Government misconstrues the injury experienced by FFRF as a result of the preferential exception of churches and religious organizations from the Form 990 reporting requirement. The injury to FFRF is the unequal treatment and burdensome requirement imposed on FFRF. By contrast, FFRF is not claiming that its tax-exempt status under § 501(c)(3) has been revoked -- precisely because FFRF has complied with the burden automatically imposed by I.R.C. § 6033(a)(1), which makes it no less an injury. The Government, however, ignores this injury and instead tries to

4

recharacterize FFRF's injury as a loss of tax-exempt status. That is not the claimed injury to FFRF, nor is such loss of status a necessary predicate for standing in this case.

The law is well-settled, moreover, that even pre-enforcement challenges to government policies and practices do constitute Article III cases or controversies. *Brandt v. Village of Winnetka*, 612 F.3d 647, 649 (7th Cir. 2010). Contrary to the Government's argument, a person need not risk sanctions before bringing a pre-enforcement challenge. *See Goldhammer v. Nagoad,* 621 F.3d 581, 586 (7th Cir. 2010). The very existence of a statute or regulation implies a clear threat to enforce, so a pre-enforcement challenge is proper under Article III. *See Bauer v. Shepard*, 620 F.3d 704, 708 (2010); *see* also *Majors v. Abell,* 317 F.3d 719, 721 (7th Cir. 2003) (a pre-enforcement plaintiff need not show that the authorities have threatened to prosecute him because "the threat is latent in the existence of the statute").

The Government's suggestion that FFRF must compromise its tax-exempt status by defying reporting requirements is as unrealistic as it is legally unnecessary. Tax-exempt status is critically important to FFRF, which status FFRF cannot afford to jeopardize, despite the apparent invitation of the I.R.S. to do so. Losing status as a § 501(c)(3) organization would have significant repercussions, jeopardizing FFRF's ability to carry out its operations, meet financial obligations, and raise funds, including because contributions by donors to tax-exempt organizations are deductible to the donor. Revocation of tax-exempt status, therefore, would result in serious damage to FFRF, including tarnishing its reputation with donors and charity organizations. In fact, in the experience of FFRF, tax-exempt status is frequently the deciding factor in decisions to make donations because of the corresponding tax deductibility to the donor. Revocation of tax-exempt status, moreover, not only threatens the flow of contributions, it also subjects an affected organization to various forms of taxation, including federal income taxes. In addition, FFRF would potentially be subject to significant penalties for failure to file a Form 990 return, including penalties that may be imposed

personally on FFRF's Co-Presidents, Annie Laurie Gaylor and Dan Barker. Finally, FFRF property also could be placed on real estate tax rolls upon revocation of tax-exempt status, which could cost FFRF hundreds of thousands of dollars in tax liabilities.

Non-compliance or disobedience, however, is not required in order to challenge the Government's preferential treatment of churches and religious organizations by exempting them from the burdensome reporting requirements of Form 990. The disparate treatment of churches/religious organizations and FFRF constitutes an unconstitutional violation of Equal Protection and Establishment Clause principles. As a result, one remedy available in such cases is to take away the preference from a preferred group in order to cure unconstitutionally unequal treatment. *See Taxation With Representation Of Washington v. Regan,* 676 F.2d 715, 743 (D.C. Cir. 1982). This requested remedy is particularly appropriate in the instant case in order to accommodate as fully as possible the policies and judgments expressed in the statutory scheme as a whole. Here, "it seems evident that the legislative judgments expressed in § 501(c) will be less disturbed by striking down the preferential treatment now accorded the lobbying of veterans' organizations than by extending that treatment to § 501(c)(3) organizations." *Id.*

The Government argues cynically, by contrast, that FFRF should simply defy its obligation; have its tax-exempt status revoked; and then seek to invalidate the Form 990 filing requirement for all tax-exempt organizations under § 501(c)(3). The Government's strained reasoning is at odds with the intended salutary disclosure purposes of Form 990, a position into which the Government is cabined by refusing to recognize that the burden of complying with the Form 990 requirement by itself satisfies the injury requirement for standing. In fact, unlike in *FFRF v. Lew,* there is no administrative process for challenging the discriminatory preference provided to churches and religious organizations short of outright refusal to file.

**IV.    CONCLUSION.**

The Seventh Circuit's decision in *FFRF v. Lew* turns on the characterization of the housing allowance for clergy being an unequal benefit that must be denied upon request in order to confer standing. By contrast, the requirement to file a Form 990 information return is a burden imposed automatically on FFRF, which unequal burden constitutes a concrete and particularized injury that satisfies the requirements of standing.

Dated this 5th of December, 2014.            **BOARDMAN & CLARK LLP**

By:

*/s/ Richard L. Bolton*
Richard L. Bolton,
Wisconsin State Bar No. 1012552
*rbolton@boardmanclark.com*
Boardman and Clark, LLP
1 S. Pinckney St., Ste 410
Madison, Wisconsin 53703-4256
Telephone: 608-257-9521
Facsimile: 608-283-1709

Notice of Electronic Filing and Service

I hereby certify that on December 5, 2014, this document was filed electronically in accordance with the ECF procedures of the United States District Court, Western District of Wisconsin, under Rule 5(d)(1), Federal Rules of Civil Procedure.   All parties who are represented and have consented to service of electronically filed documents are served upon receipt of the NEF from the electronic filing system.

To the best of my knowledge, there are no parties in this case that require service by means other than electronic service using the Court's NEF.   The original document on file contains a valid original signature.

f:\docs\wd\26318\25\a2048246.docx